UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL B.,

                Plaintiff,

v.                                                          1:18-CV-0498 (TWD)

COMM'R OF SOC. SEC.,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF STEVEN R. DOLSON<br>  Counsel for Plaintiff<br>126 North Salina Street, Suite 3B<br>Syracuse, New York 13202 | STEVEN R. DOLSON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza - Room 3904<br>New York, NY 10278 | CATHARINE L. ZURBRUGG, ESQ. |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Paul B. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.      RELEVANT BACKGROUND

    A.      Factual Background

Plaintiff was born in 1979, making him 31 years old at the alleged onset date and 38 years old at the date of the ALJ's March 2017 decision. Plaintiff reported completing the eleventh grade and taking college courses. He has previous work as a security guard, warehouse worker, door-to-door salesman, fast food worker, hand packager, and pizza cook and deliverer, as identified by the vocational expert ("VE") at the administrative hearing in March 2017. Plaintiff initially alleged disability due to borderline personality disorder with anger outbursts.

    B.      Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on March 14, 2013, and for Supplemental Security Income on March 27, 2013, alleging disability beginning August 10, 2010. Plaintiff's applications were initially denied on August 20, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at an administrative hearing before ALJ Carl E. Stephan presumably on November 12, 2014, as indicated by the Court Transcript Index, but the record does not appear to contain a transcript for this hearing. On April 22, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 142-62.)[1] On September 2, 2016, the Appeals Council remanded the case back to the ALJ because the hearing recording was inaudible and therefore the record was incomplete. (T. 165, 233.)

---

[1]     The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system. All other page references identified by docket number are to the page number assigned by the Court's CM/ECF electronic filing system.

Plaintiff appeared at a subsequent administrative hearing before ALJ Stephan on March 2, 2017. (T. 77-119, repeated at T. 39-76.) On March 30, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 12-36.) On March 14, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's March 2017 decision the final decision of the Commissioner. (T. 1-6.)

### C. The ALJ's Decision

The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and he had not engaged in substantial gainful activity since August 10, 2010, the alleged onset date. (T. 17.) Plaintiff's right shoulder and back pain, arthritic changes to the left knee, carpal tunnel syndrome, morbid obesity, bipolar disorder, anxiety disorder, and depressive disorder are severe impairments. (T. 17-20.) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 20-22.) The ALJ then found Plaintiff has the residual functional capacity ("RFC") to perform light work except he

> can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours per workday with normal breaks; stand and walk for six hours per workday for one hour at a time, before requiring a change [in] position for five minutes; and can occasionally climb stairs and ramps, stoop, crouch, balance and kneel. [He] can never climb ladders, scaffolds or crawl. He can occasionally reach overhead with the right upper extremity; can frequently, but not constantly, handle and finger with the right hand. He cannot operate foot controls with the left lower extremity. Further, [he] is able to understand, remember and carry out simple instructions, perform simple work and make judgments on simple work-related decisions. [He] can occasionally understand, remember and carry out complex instructions, perform complex work and make judgments on complex work-related decisions. [He] can frequently interact with the public, supervisors[, and] co-workers. He can occasionally adapt to changes in the work setting.

3

(T. 22.) Plaintiff is unable to perform any past relevant work, but he can perform other jobs existing in significant numbers in the national economy. (T. 28-29.) The ALJ therefore concluded Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff argues the ALJ failed to properly apply the treating physician rule because the ALJ did not mention or address the September 2013 opinion of treating psychiatrist K.S. Krishnappa, M.D. (Dkt. No. 9 at 4-7; T. 569-70.) Plaintiff also contends the ALJ failed to address the opinion of medical expert John Kwock, M.D. (*Id*. at 8-9; T. 635-43.) Plaintiff then argues these errors are not harmless because the hypothetical question posed to the VE did not include limitations opined by Dr. Krishnappa and Dr. Kwock and the ALJ did not discuss or comment on these opinions. (*Id*. at 7, 9.)

Defendant argues the ALJ properly addressed Dr. Krishnappa's opinion, providing a detailed discussion of this opinion and good reasons for not giving it controlling weight. (Dkt. No. 12 at 17-20.) Defendant also contends any error by the ALJ in not weighing Dr. Kwock's opinion was harmless. (*Id*. at 20-22.) Defendant concludes that substantial evidence supports the ALJ's determination at Step Five. (*Id*. at 21-22.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

5

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

III.  **ANALYSIS**

A.  **RFC and the Treating Physician Rule**

RFC is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in

6

an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal citations omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). The factors

7

for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### B. The ALJ's Analysis of the Opinion Evidence

In his RFC analysis, the ALJ indicated he carefully examined the August 2013 consultative examination report from Neil Berger, Ph.D., which indicated diagnoses including bipolar II disorder, anxiety disorder not otherwise specified ("NOS"), and psychotic disorder NOS. (T. 24-25, 455-59.) Dr. Berger opined

> The claimant can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration and a regular schedule, learn new tasks, and make appropriate decisions. He has mild limitations in his ability to perform complex tasks independently, moderate limitation in his ability to appropriately deal with stress, and marked limitations in his ability to relate adequately with others with all of his anger. The results of the examination appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.

(T. 458.) The ALJ stated he could find no evidence "to support a conclusion that [Plaintiff's] ability to interact with others was markedly limited" and his "self-reported problems with irritability and anger are not borne out by clinical examinations or treating source reports." (T. 25.) The ALJ therefore concluded Dr. Berger's opinion was of limited probative value. (*Id.*)

As part of the initial determination in August 2013, non-examining state Agency consultant R. Petro, Ph.D., opined that Plaintiff had a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining, concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (T. 126-29, 136-39.) Dr. Petro indicated Plaintiff was "viewed as able to understand

instructions, complete simple and some complex tasks, get along with others and adapt to routine changes." (T. 129, 139.)

In September 2013, treating psychiatrist Dr. Krishnappa noted Plaintiff's psychiatric treatment with a guarded prognosis. (T. 569.) He opined Plaintiff was moderately limited in maintaining attention/concentration, interacting appropriately with others, maintaining socially appropriate behavior without exhibiting behavior extremes, maintaining basic standards of personal hygiene and grooming, and appearing able to function in a work setting at a consistent pace. (T. 570.) He indicated there was no evidence of limitations in understanding and remembering instructions, carrying out instructions, or making simple decisions. (T. 570.) The ALJ discussed Dr. Krishnappa's opinion in the context of reviewing the opinion of a non-examining medical expert, Daryl Didio, Ph.D., as summarized below. (T. 25-26.)

The ALJ reviewed the December 2014 opinion of Dr. Didio who indicated diagnoses including mood disorder NOS and personality disorder. (T. 25-26, 596-603.) Dr. Didio stated Plaintiff did not meet or medically equal a listing, including Listings 12.02, 12.03, 12.04, 12.06, and 12.08. (T. 601-02.) He opined Plaintiff had mild limitations in understanding, remembering and carrying out complex instructions and in making judgments on complex work-related decisions as well as moderate limitations in interacting with the public, supervisors and coworkers and in responding appropriately to usual work situations and to changes in a routine work setting. (T. 596-97.) In considering Plaintiff's limitations in the ability to interact appropriately with supervision, coworkers, and the public, Dr. Didio indicated the "most weight" was given to the September 2013 report from Plaintiff's treating psychiatrist, Dr. Krishnappa, who rated Plaintiff as having moderate impairments within this domain. (T. 569-70, 597.) Dr. Didio also opined mild-to-moderate restriction of activities of daily living, moderate-to-marked

9

difficulties in maintaining social functioning, and mild-to-moderate difficulties in maintaining concentration, persistence or pace. (T. 600.) He noted Plaintiff's record reflected the cognitive, emotional, and social ability to perform at least simple routine tasks in a low socially-impacted environment and that there was the suggestion that he could perform at a higher level. (T. 603.)

The ALJ noted Dr. Didio's reliance upon the September 2013 report from Dr. Krishnappa was misplaced. (T. 25.) The ALJ stated this was because Plaintiff was discharged from treatment in July 2013 due to poor compliance and attendance and Plaintiff "had not been seen by his therapist for more than a year" at the time of Dr. Krishnappa's September 2013 report. (T. 25, 543-68.) The ALJ also noted Dr. Didio did not consider subsequent reports provided by Dr. Krishnappa. (T. 25-26, 600.) Dr. Didio also acknowledged some of Plaintiff's allegations were not credible and might, in fact, have reflected malingering. (*Id*.) The ALJ did not find the functional limitations identified by Dr. Didio were an accurate reflection of the record and concluded his report was of limited probative value. (T. 26.) The ALJ indicated he also found Dr. Krishnappa's September 2013 report similarly of limited probative value "given the foregoing reasoning." (*Id*.)

The ALJ also reviewed the January 2015 opinion from consultative examiner Joseph Prezio, M.D., who diagnosed a right shoulder impairment, left knee pain most likely due to degenerative arthritis changes with a significant weight overload as noted by the obesity that was present, prediabetes, hypertension, and asthma by history. (T. 23-24, 610-19.) Dr. Prezio opined Plaintiff had moderate-to-marked restrictions with respect to engaging in any prolonged standing, walking, squatting, kneeling, bending, or doing any heavy lifting as a result of the left knee compromise noted on exam coupled with the weight overload problems. (T. 613.) Dr. Prezio also opined Plaintiff had moderate limitations with respect to engaging in fine and gross

10

manipulation of the right shoulder and that Plaintiff needed to avoid smoke, dust, and other known respiratory irritants because of a history of asthma. (*Id*.)

Per Dr. Prezio, Plaintiff could occasionally lift and carry up to ten pounds and never lift or carry over ten pounds due to the left knee and right shoulder compromise; sit for two hours at one time for a total of four hours, stand for 30 minutes at a time for a total of one hour, walk for 20 minutes at a time for a total of one hour because of left knee pain; do occasional overhead reaching, but never do other reaching, handling, fingering, feeling, pushing or pulling with the right upper extremity due to right shoulder impairment; do frequent reaching, handling, fingering, feeling and pushing/pulling with the left upper extremity; frequently use the right foot for operation of foot controls; never use the left foot for operation of foot controls due to left knee pain; never climb stairs and ramps, ladders or scaffolds and never balance, stoop, kneel, crouch or crawl due to right shoulder impairment and left knee pain; occasionally tolerate moving mechanical parts, operating a motor vehicle, humidity/wetness and pulmonary irritants; and never tolerate unprotected heights, extreme cold/heat, or vibrations due to right shoulder and left knee impairments. (T. 614-18.) He also indicated a cane was medically necessary; the cane was available for vertical stability; and Plaintiff could ambulate for 20 feet without the use of a cane. (T. 615.)

The ALJ indicated he found "virtually no support for the limitations described by Dr. Prezio" and the "functional limitations identified by Dr. Prezio appear to be predicated upon subjective allegations." (T. 23-24.) The ALJ stated that without "diagnostic studies and clinical findings by treating sources, [he could not] conclude that the opinion of Dr. Prezio is consistent with the medical evidence of record" and therefore concluded Dr. Prezio's opinion was of very limited probative value. (T. 24.)

11

In November 2016, non-examining medical expert and orthopedic surgeon John Kwock, M.D., responded to a medical interrogatory indicating Plaintiff had impairments including left[2] shoulder impingement, chondromalacia of the patella in the left knee, carpal tunnel syndrome in the right upper extremity, and morbid obesity. (T. 635-43.) Dr. Kwock opined Plaintiff did not meet or equal any listing including Listings 1.00B, 1.02A, 11.04B, or 11.14. (T. 642.) However, he did opine Plaintiff had limitations in repetitive overhead use of the left arm, repetitive bending of the left knee, and fingering and feeling with the right hand. (T. 643.)

Dr. Kwock further opined Plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds; sit for four hours at a time for a total of eight hours, stand for four hours at a time for a total of eight hours, and walk for four hours at a time for a total of six hours; continuously reach, handle, finger, feel and push/pull with the right upper extremity; frequently reach overhead and continuously do other reaching, handling, fingering, feeling and pushing/pulling with the left upper extremity; frequently use both feet for operation of foot controls; frequently climb stairs and ramps, balance, stoop and kneel; occasionally crouch; never climb ladders or scaffolds; never crawl; and frequently tolerate unprotected heights, moving mechanical parts and operating a motor vehicle. (T. 635-39.) Dr. Kwock indicated Plaintiff did not require a cane to ambulate. (T. 636.)

Notably, it does not appear that the ALJ mentions or discusses Dr. Kwock's November 2016 opinion (T. 635-43) at all when assessing Plaintiff's RFC. (T. 22-28.)

---

[2]  It is unclear if Dr. Kwock intended to indicate a right shoulder impairment as Dr. Prezio did. (T. 612, 614, 616-19, 641.)

### C. The Court's Analysis

Plaintiff argues the ALJ failed to address the opinions of treating psychiatrist Dr. Krishnappa and medical expert Dr. Kwock. (Dkt. No. 9 at 4-9.) The Court does not find Plaintiff's argument related to the ALJ's lack of consideration of Dr. Krishnappa's opinion to be persuasive. (*Id*. at 4-7.) As Defendant points out, the ALJ did note medical expert Dr. Didio relied most heavily on Dr. Krishnappa's opinion and the ALJ stated Dr. Krishnappa's opinion was of limited probative value. (Dkt. No. 12 at 17-18; T. 25-26.) While the ALJ's analysis of Dr. Krishnappa's September 2013 opinion is brief and within the context of his analysis of Dr. Didio's opinion, it is clear the ALJ considered Dr. Krishnappa's opinion in assessing Plaintiff's RFC. (T. 25-26.) Further, the ALJ's overall decision reflects a detailed overview of Plaintiff's mental impairments and limitations, Dr. Krishnappa's treatment notes, and Plaintiff's longitudinal mental health treatment. (T. 17-28.)

However, the Court finds Plaintiff's argument related to the ALJ's failure to address Dr. Kwock's opinion to be persuasive. (Dkt. No. 9 at 8-9.) The Court's review does not indicate any mention of this opinion within the ALJ's decision. (T. 17-28.) Defendant contends any error by the ALJ in not weighing Dr. Kwock's opinion was harmless because the RFC conforms to Dr. Kwock's opinion in most material respects including the limitation to never crawl, and because the environmental restrictions opined by Dr. Kwock which are not included in the RFC would not significantly affect Plaintiff's occupational base. (Dkt. No. 9 at 8; Dkt. No. 12 at 20-22.) The Court disagrees.

The ALJ's decision lacks any analysis of this medical opinion in contravention of his duty to properly consider and weigh the opinions before him. The ALJ was tasked with reviewing all of the evidence which was before him, resolving any inconsistencies therein, and

13

making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). The Court's task is not to fill any gaps in the ALJ's analysis and reweigh that evidence. *See Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

Further, the ALJ is required to provide his rationale in the written decision sufficient to allow this Court to conduct an adequate review of his findings. *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (quoting *Morgan on behalf of Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, 07-CV-0646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris*, 728 F.2d at 587); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). The ALJ has not done so here. Because the ALJ's decision lacks any

mention of Dr. Kwock's opinion and that opinion includes environmental limitations[3] which were not discussed or included in the RFC determination, the Court finds this opinion was not properly considered by the ALJ. (T. 17-28.) The Court therefore cannot determine if the RFC is supported by substantial evidence.

For the reasons outlined above, the ALJ's analysis of the medical opinions and Plaintiff's resulting RFC is not supported by substantial evidence. Remand is therefore required.

Finally, the Appeals Council should assign this case on remand to a different ALJ pursuant to HALLEX I-2-1-55(D). 1993 WL 642977. Although "whether to assign a new ALJ on remand is generally a determination for the Commissioner" and Plaintiff has not asked the Court for such relief, the Commissioner "should consider in [his] discretion whether the case warrants a 'fresh look' by a new ALJ." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 300-01 (W.D.N.Y. 2006) (citing *Nunez v. Barnhart*, 01-CV-5714, 2002 WL 31010291 (E.D.N.Y. Sept. 9, 2002); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>DENIED</u>**; and it is further

---

[3] The Court notes that consultative examiner Dr. Prezio also opined environmental limitations which the ALJ did not explicitly address in discussing that opinion or include in the RFC. (T. 23-24, 618.)

15

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: September 11, 2019
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge